IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

KAREN KING                                                                                                    PLAINTIFF

            v.                    Civil No. 3:11-cv-03056-JRM

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                                         DEFENDANT

**MEMORANDUM OPINION**

I.       **Factual and Procedural Background**

       Plaintiff, Karen King, brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act").

       Plaintiff protectively filed her applications on August 7, 2008, alleging a disability onset date of January 1, 2008, due to major depressive disorder with psychotic features, post-traumatic stress disorder ("PTSD"), adjustment disorder, anxiety disorder, hypertension, surgical adhesions, shoulder injury, pulmonary nodules, chronic fatigue, chronic pain, and bronchial asthma. Tr. 10, 12, 70, 73. On the alleged onset date, Plaintiff was forty-six years old with a college education. Tr. 17, 194-195, 451. She has past relevant work as a nurse, door keeper, stocker, and grocery checker. Tr. 16-17, 54-56.

       Plaintiff's applications were denied at the initial and reconsideration levels. Tr. 70-76, 79-83. At Plaintiff's request, an administrative hearing was held on December 16, 2009. Tr. 24-65. Plaintiff was present at this hearing and represented by counsel. The ALJ rendered an unfavorable

decision on May 14, 2010, finding Plaintiff was not disabled within the meaning of the Act. Tr. 7-18. Subsequently, the Appeals Council denied Plaintiff's Request for Review on May 25, 2011, thus making the ALJ's decision the final decision of the Commissioner. Tr. 1-6. Plaintiff now seeks judicial review of that decision.

## II.     Applicable Law

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that she is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe

impairment that significantly limits her physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform her past relevant work; and (5) if the claimant cannot perform her past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given her age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

### III.    ALJ's Determination

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since January 1, 2008, the alleged onset date. Tr. 12. At step two, the ALJ found Plaintiff suffers from alcohol abuse, depression, ilioinguinal hernia, and a respiratory disorder, which were considered severe impairments under the Act. Tr. 12-13. At step three, she determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 13-14.

At step four, the ALJ found Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she could have no more than moderate exposure to airborne irritants, dust, fumes, and odors, and no more than moderate exposure to extremes of temperature or humidity. Tr. 14-16. Additionally, the ALJ limited Plaintiff to occasional stooping and crouching and occasional overhead reaching with the left upper extremity. Tr. 14-16. Mentally, the ALJ determined Plaintiff could perform unskilled work where interaction with others is

incidental to the work performed. Tr. 14-16.

With these limitations, the ALJ found Plaintiff could not perform her past relevant work. Tr. 16-17. However, after receiving vocational expert testimony, the ALJ found jobs existing in significant numbers in the national economy that Plaintiff could perform.[1] Accordingly, the ALJ determined Plaintiff was not under a disability from January 1, 2008, the alleged onset date, through May 14, 2010, the date of the administrative decision. Tr. 18.

## IV. Discussion

On appeal, Plaintiff contends the ALJ erred by: (A) failing to assign proper weight to the opinion of her treating physicians; (B) failing to properly evaluate her noncompliance with medication; and (C) failing to properly account for her mental impairments. *See* Pl.'s Br. 10-19. For the following reasons, the court finds that substantial evidence does not support the ALJ's decision.

At the fourth step of the evaluation, a disability claimant has the burden of establishing her RFC. *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). A claimant's RFC is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Masterson*, 363 F.3d at 737. The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be

---

[1] The ALJ determined Plaintiff could perform the requirements of representative light, unskilled occupations such as small products assembler, of which there are 950 jobs regionally and 108,500 jobs nationally, and machine tender, of which there are 1,500 jobs regionally and 118,800 jobs nationally, and sedentary, unskilled occupations such as machine tender, of which there are 250 jobs regionally and 18,000 jobs nationally, sedentary assembler, of which there are 400 jobs regionally and 31,000 jobs nationally, and escort vehicle driver, of which there are 150 jobs regionally and 22,500 jobs nationally. Tr. 17-18, 56-65.

"some medical evidence" to support the ALJ's determination. *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

In this instance, the ALJ did not properly evaluate Plaintiff's mental impairments. The medical evidence of record reflects significant mental health treatment during the relevant time period. Plaintiff had two inpatient hospitalizations at Vista Health: July 11, 2008-July 15, 2008, and December 30, 2008-January 16, 2009. Tr. 268-282, 383-434, 698-938. While hospitalized in July 2008, Plaintiff was diagnosed with alcohol abuse and major depression, severe, without psychosis. Tr. 269, 282. She reported drinking one pint of alcohol daily. Tr. 713. She also reported suicidal ideation, depression, anxiety, periods of "blacking out," and sexual abuse as a child. Tr. 726, 732. At intake, Plaintiff's Global Assessment of Functioning ("GAF") score was estimated at 20. Tr. 282. Plaintiff was treated with Celexa and Xanax, individual and group therapy, and psychiatric evaluation. Tr. 269, 734. At the time of discharge, Michael Hollomon, M.D., estimated Plaintiff's GAF score at 40. Tr. 269.

On December 30, 2008, Plaintiff presented with suicidal ideation and plan, depression, blackouts, and a history of alcohol dependence. Tr. 386. She reported that her daughter was killed in a car accident in October 2008. Tr. 390, 784. Plaintiff also reported hearing her daughter's voice for the last several weeks. Tr. 390, 395. When questioned about alcohol use, Plaintiff stated she drank a pint of 100 proof alcohol every other day, with her last use being one week earlier. Tr. 393. On examination, Plaintiff was highly anxious, tense, and tired. Tr. 831. Her mood was significantly depressed and highly anxious with a dysphoric, apprehensive, and sad affect. Tr. 831. Plaintiff was able to maintain concentration and focus with effort. Tr. 831-832. Her memory for recent and remote events was adequate. Tr. 831. Recall memory was impaired. Tr. 831. Thought processes

were scattered but not quite disorganized. Tr. 832. Associations were minimally loosened and Plaintiff was circumstantial in her speech. Tr. 832. Thought content was notable for suicidal ideation. Tr. 832. At the time of admission, Plaintiff's medications included Combivent inhaler, Elavil, Prilosec, Lasix, Hydrocodone, potassium chloride, ibuprofen, Celexa, Metoprolol, Xanax, and Advair. Tr. 405.

Lewis E. Britton, M.D., diagnosed Plaintiff with major depressive disorder, recurrent, severe, with mood congruent psychotic features, PTSD, chronic with acute exacerbation, bereavement, personality disorder not otherwise specified, and alcohol dependence, in sustained partial remission. Tr. 387, 423-424, 778, 832. Plaintiff was treated with Amitriptyline and Cymbalta. Tr. 788.

While at Vista Health, Plaintiff underwent a neuropsychological evaluation with Ronald E. McInroe, Psy.D. Tr. 425-429. Dr. McInroe could not complete the neuropsychological evaluation because Plaintiff had multiple "meltdowns" and had to be sedated. Tr. 429. On the Wechsler Adult Intelligence Scale III, Plaintiff received scores placing her within the average range of intellectual functioning. Tr. 427. On the Minnesota Multiphasic Personality Inventory-2, Plaintiff generated an invalid profile suggesting conscious magnification of symptomatology, which Dr. McInroe interpreted as a plea or cry for help. Tr. 429. Dr. McInroe diagnosed Plaintiff with PTSD, chronic type, depressive disorder, not otherwise specified, sexual abuse of a child, victim, personality disorder not otherwise specified (borderline), and alcohol dependence in partial remission. Tr. 429. At the time of discharge, Plaintiff's GAF score was estimated at 40. Tr. 387, 423-424, 790. Dr. Britton noted that Plaintiff steadily improved throughout hospitalization, but borderline features became more apparent and PTSD anxiety was still significant at the time of discharge. Tr. 789. Plaintiff was referred to Ozark Guidance Center for outpatient care. Tr. 789.

Following her initial hospitalization at Vista Health, Plaintiff began outpatient treatment at Ozark Guidance, Inc. Tr. 483-518, 631-672. In August 2008, Plaintiff was diagnosed with alcohol abuse, depressive disorder not otherwise specified, and rule out borderline personality disorder. Tr. 506. She was assessed with a GAF score of 40. Tr. 507. In March 2009, Plaintiff reported severe grief over her daughter's death. Tr. 496. She also reported that she stopped drinking three months earlier. Tr. 499. Plaintiff was diagnosed with bereavement, alcohol abuse, and bipolar I disorder, last episode mixed, severe, with psychotic features. Tr. 496. Her GAF score was estimated at 45. Tr. 496.

In April 2009, Brian Mooney, M.D., diagnosed Plaintiff with bipolar disorder, Type I, depressed, alcohol dependence, PTSD, bereavement, and cluster B traits. Tr. 486. Dr. Mooney noted that Plaintiff had "a very complex case" with personality disorder issues mixed in with clear bipolar and anxiety issues that would benefit heavily from psychotherapy. Tr. 486. He increased Plaintiff's dosage of Geodon and Celexa and tapered off Amitriptyline. Tr. 486. He also prescribed Seroquel. Tr. 486. On April 30, 2009, tremors of Plaintiff's hands and tongue were noted. Tr. 664. As a result, Plaintiff was placed on Cogentin. Tr. 664. Mary Jeppsen, Plaintiff's counselor, estimated Plaintiff's GAF score at 45. Tr. 665. She noted that Plaintiff had improved since her medications had been stabilized and changed. Tr. 666.

On June 23, 2009, Mary Ann Adams, APN, noted that Plaintiff had stopped taking Antabuse due to cost, but Plaintiff reported no alcohol use. Tr. 671. Ms. Adams noted that Plaintiff was mostly stable on her present medications and her moods were even. Tr. 671. She diagnosed Plaintiff with bipolar disorder, Type I, depressed, PTSD (from sexual abuse and daughter's death), bereavement, history of alcohol abuse, rule out dissociative disorder, and cluster B traits. Tr. 671-

672. At the time, Plaintiff's medications included Cogentin, Geodon, Celexa, Xanax, and Seroquel. Tr. 672. On September 15, 2009, Ms. Jeppsen estimated Plaintiff's GAF score at 40, noting that Plaintiff was still grieving strongly over her daughter's death. Tr. 951-952.

On February 24, 2009, Plaintiff saw Terry L. Efird, Ph.D., for a consultative mental evaluation. Tr. 450-454. Plaintiff listed her medications as Amitriptyline, Xanax, Geodon, and Ativan. Tr. 451. She reported fatigue, poor appetite, feelings of guilt over her daughter's death, memory difficulties, and suicidal thoughts. Tr. 450-451. Plaintiff denied current alcohol usage, stating she last drank nine weeks prior to her appointment. Tr. 451. On examination, Plaintiff's mood was dysphoric and her affect was appropriate to content. Tr. 451. Thought processes were logical, relevant, and goal-directed. Tr. 452. Plaintiff denied experiencing visual and auditory hallucinations. Tr. 452. Dr. Efird diagnosed Plaintiff with major depressive disorder, moderate to severe, alcohol abuse, in partial remission, and possible dependent personality traits. Tr. 452-453. He estimated Plaintiff's GAF score at 50-60. Tr. 453. Dr. Efird noted that Plaintiff had no difficulty with activities of daily living, communicating and interacting in a socially adequate, intelligible, and effective manner, performing basic cognitive tasks required for basic work-like activities, tracking and responding, persisting in completion of tasks, and completing most tasks within an adequate time frame. Tr. 453. However, he noted a mild to moderate degree of impairment in attention and concentration. Tr. 453.

On March 10, 2009, Winston Brown, Ph.D., completed a Mental RFC Assessment, in which he determined Plaintiff had moderate mental limitations, but would be capable of semiskilled work. Tr. 455-458. In a Psychiatric Review Technique Form ("PRTF"), Dr. Brown determined Plaintiff's impairments did not meet or equal a listed impairment. Tr. 459-472. He found mild restriction of

activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and one or two episodes of decompensation, each of extended duration. Tr. 469.

On December 22, 2009, Ms. Jeppsen completed a Mental RFC Questionnaire, in which she determined that Plaintiff was unable to work due to intense anxiety, PTSD flashbacks and fear, poor concentration, and physical fatigue. Tr. 958-962. She noted that Plaintiff's symptoms could be moderately controlled with medication, but psychotherapy was essential for daily functioning. Tr. 958. She also found that Plaintiff could not cope with normal job stress. Tr. 958. Ms. Jeppsen found Plaintiff had no useful ability to function in three unskilled work-related categories, was unable to meet competitive standards in four unskilled work-related categories, and was seriously limited, but not precluded in five unskilled work-related categories. Tr. 959. She determined Plaintiff would likely miss more than four work days per month if employed. Tr. 962.

In determining Plaintiff's RFC, the ALJ relied heavily on the opinions of Dr. Efird and the agency consultants. *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (the assessment of a doctor who evaluates a claimant once or not at all does not usually constitute substantial evidence). She dismissed Ms. Jeppsen's opinion, noting that Plaintiff reported that her anxiety and depression were controlled with medication. Tr. 16. The Commissioner also notes that Ms. Jeppsen is not considered an "acceptable medical source." *See* Def.'s Br. 5.

While it is true that a licensed counselor is not considered an "acceptable medical source," an ALJ may consider evidence from "other sources" to show severity of a claimant's impairment(s) and how it affects his or her ability to work. 20 C.F.R. § 404.1513(d). Moreover, Ms. Jeppsen was part of a "team" approach to treatment, which included Drs. Mooney and Demski, and Ms. Adams,

an APN. *Shontos v. Barnhart,* 328 F.3d 418, 426 (8th Cir. 2003) (claimant's team of health care providers, including her counselor and a nurse practitioner, could be afforded "treating" source status because they were part of a treating team that included an acceptable medical source). Here, Ms. Jeppsen did not simply offer an opinion that Plaintiff was disabled. She provided detailed information concerning Plaintiff's mental limitations, noting that Plaintiff could not cope with normal job stress (even with medication and therapy), maintain a regular work schedule, and engage in normal public interaction. Tr. 958-962. She also found that Plaintiff suffered from intense anxiety, PTSD flashbacks, poor concentration, and fatigue. Tr. 958-962. As Plaintiff's counselor, Ms. Jeppsen saw Plaintiff on a regular basis and was in the best position to gauge her overall progress.

The evidence of record, including treatment records, Plaintiff's two inpatient hospitalizations, and Plaintiff's decline in functioning following her daughter's tragic death, is inconsistent with an ability to perform light, unskilled work with incidental interaction with others. Moreover, Plaintiff suffers from serious mental illness that has not been consistently controlled by medication. *See Vincent v. Apfel,* 264 F.3d 767, 769 (8th Cir. 2001) (ALJ's finding that claimant's schizophrenia was in remission and controlled by medication was inconsistent with extensive treatment records, which showed that claimant had complained of medication side effects, regularly hallucinated, tended to isolate himself, and would remain in treatment indefinitely). Although Plaintiff periodically reported improvement in mood and overall functioning, Ms. Jeppsen noted that Plaintiff was still grieving strongly over her daughter's death. Tr. 666, 671, 951-952. Additionally, Dr. Mooney noted that Plaintiff had "a very complex case" with personality disorder issues mixed in with clear bipolar and anxiety issues. Tr. 486. For these reasons, substantial evidence does not support the ALJ's opinion.

As such, this case is remanded for further development of the record concerning Plaintiff's mental impairments.

On remand, the ALJ should attempt to obtain an RFC assessment from Dr. Mooney or one of Plaintiff's other treating mental health sources. Once a detailed RFC assessment is obtained, the ALJ should reconsider whether Plaintiff's mental impairments allowed her to engage in substantial gainful employment during the relevant time period.

V.      **Conclusion**

Accordingly, the undersigned concludes that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). This matter should be remanded to the Commissioner for reconsideration of the issue of Plaintiff's RFC, based on all relevant evidence, including medical records, opinions of treating medical personnel, and Plaintiff's description of her own limitations. *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001).

IT IS SO ORDERED this 19th day of September 2012.

/s/ *J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE